Cresson, Clearfield County & New York Short Route Railroad Company, Plff. in Err., v. Valentine Aunsman.

Where an appeal is taken from viewers and an issue is framed as in an action *quare clausum fregit*, under which the parties have an opportunity of canvassing the facts and settling their rights, the form of issue is of no consequence.

---

NOTE.—On appeal from an award of viewers an issue is framed as in an action of trespass. Wilmington & R. R. Co. v. Stauffer, 60 Pa. 374, 100 Am. Dec. 574; Philadelphia, G. & N. R. Co. v. Smick, 2 Whart. 273. The court

The court in its charge to the jury used the following language: "Your damages, it seems to us (although it is merely an opinion of our own and not intended to sway you), could not be less than the estimate of Mr. Myers, which would be $300, or any figure from that up to about $750, which we believe is the maximum." *Held,* that the court's opinion was properly qualified and did not trespass on the province of the jury.

(Argued October 11, 1887.   Decided October 31, 1887.)

October Term, 1887, No. 47, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ.   Error to the Common Pleas of Cambria County to review a judgment in favor of the plaintiff on an issue to determine the damages sustained by the plaintiff from the construction of a railroad.   Affirmed.

On November 10, 1885, the plaintiff filed his petition for the appointment of viewers to assess the damages sustained in consequence of the construction of the defendant's railroad.   Viewers were appointed who made an award in favor of the plaintiff from which the defendant appealed.   On June 16, 1886, the plaintiff, under direction of the court, filed his *narr.* as in an action of trespass *quare clausum fregit* and the defendant pleaded not guilty.

Other facts are stated in the opinion of the court.

The defendant presented, *inter alia,* the following points:

1. The defendant having complied with the requirements of the law, strictly, before entering upon land for the plaintiff, was in the lawful possession for the purpose of locating and constructing the railroad, and hence not trespassing; therefore the action of "trespass *quare clausum fregit*" will not lie, and the verdict must be for the defendant.   Refused.

2. The plaintiff having failed to show the quantity, quality, and value of the land and materials taken or used in the construction of the road, cannot recover in this form of action, and the verdict must be for the defendant.   Refused.

3. In "trespass *quare clausum fregit*" the specific acts of trespass, with the quantity and value of the property taken or destroyed, must be proven; not the value of the land before and after the trespass, as a means of fixing the amount of damages;

may direct the issue without the framing of pleadings.   New York, C. & St. L. R. Co. v.  Price, 4 Pennyp. 200; Mack v. Eastern & N. R. Co. 5 Northampton Co. Rep. 378.

and, the plaintiff having failed to do so, the verdict must be for the defendant.   Refused.

The court, JOHNSTON, P. J., charged, *inter alia,* as follows:

The defendant, more familiarly known as the Cresson & Coalport Railroad, a small railroad in the eastern part of the county, running from Cresson to Coalport, Clearfield county, before breaking ground for its work upon this road, failed, after an attempt to make an agreement with the plaintiff in this case for the right of way; and hence proceeded under the act of assembly to file a bond, which bond is in court and remains as ample security for whatever verdict you may render against this defendant company.   Afterwards an issue was formed under the direction of this court; and upon that issue you are to determine the amount of damages, if any, which have been sustained by the plaintiff by the use of his land by the railroad company.   The plaintiff is the owner of a tract of land containing some 50 acres, and the company in locating its road passed through the entire tract, making such excavations and embankments as were necessary for the purposes of the road, taking a certain portion of his land and separating the farm into two parts as shown by the draft which you will have before you, and which I believe it is not disputed correctly represents the course of the road through the land.

The plaintiff here, a farmer, purchased this land many years ago, and his deed will be before you.   He has the title and he has a right to the enjoyment of it, and any injury done to his land should be compensated in damages.

[The amount of damage, as near as you can ascertain from the conflicting testimony before you, should be the measure of your verdict.]

He might, as a farmer, seeking no business pursuits, no commercial transactions, feel annoyed; he might and would, naturally, feel the damage greater to him than it really is in point of fact.   You cannot take into view his objections to railroads. You cannot take into view his annoyance about any future losses, such as danger to his cattle, or anything of that kind; but you should take into view and render him a just verdict for the actual damage to his land; and that would be best ascertained by what the land was worth before the road was made, and what it was worth afterwards, without any regard to danger.

We all know that to a farmer, seeking no other employment, a railroad passing through his land would be a great annoyance; but the mere annoyance is not a part of what he can recover damages for. [You must ascertain and take his actual loss. For that he should be fully compensated.]   .   .   .

Now you have heard all the testimony. After showing his title to the land, his possession of it, the plaintiff calls W. A. B. Little, Esq., who estimates the value of the land at $1,200 before the construction of this railroad, and at $500 since its completion, showing a difference of $700.

Mr. McAteer, who was with him in examining the land, estimates the value of the land before the construction of the railroad at $1,500, and thinks it is depreciated one half; that would be $750.

John Doherty was also with him, and estimates the value of the land before the construction of the railroad at $1,200, and afterwards at $500. This is the testimony of three witnesses, all respectable gentlemen, who have testified to the figures I have just mentioned, and give to a greater or less extent the reason for the figures. Mr. Little and Mr. McAteer speak of actual measurements, showing the quantity of land taken by excavations and embankments, and the number of feet that the road passed through this land. [There is no question but their testimony is entirely reliable]; and still, like the testimony of every other witness that can be called in any case, it is subject to scrutiny. They are the plaintiff's witnesses sent upon the ground to make this estimate for him; and their judgment, like the judgment of any honest man might be swayed in view of their position and the employment that they were engaged in; they would be more liable to put too high a value than too low a one, and yet the difference between the testimony of Mr. Little and Mr. McAteer, both equally intelligent and equally truthful witnesses, is $300 in the original value of this land, one naming $1,200 and the other $1,500, which shows how uncertain these general valuations of land are in all cases; but it is for you to consider them all, and reconcile them with the testimony upon the other side, and approximate as closely as you can to a correct result. Law is not one of the exact sciences; and when your verdict is rendered you cannot be sure that you make it exactly what it ought to be, no matter how you decide. It is for us to approach as near to justice as we can under the testimony laid

before us.    They have called Frank Koons as a witness in regard to the timber cut on the land.    He supposes the quantity cut would be 25,000 feet, and stumpage on that would be $2.50 per thousand; and on cross-examination he says it might have been not more than 20,000 feet; he only estimates the quantity, and this timber was left upon the land of the plaintiff here, as I understood the witness; but you will recollect the testimony, that it was thrown off the track to one side.    .    .    .

George A. Myers, a very respectable and intelligent gentleman, who was the agent of the company in trying to secure releases, states that before this railroad was constructed the property was worth about $800, and afterwards about $500.    F. D. Saupp, Esq., represents the property as worth $800 before the construction of the road, but declined to give an opinion as to what it is now worth; he had been over the property ten years ago, I think he said.    Mr. Dawson estimates the property at $1,000 before the construction of the road and says that it would be worth from $400 to $500 less after its construction.    John Grove testified that half the land is cleared; and Mr. Himmelwright says that this property would be worth $1,200 to $1,500 before the construction of the road, but after its construction he is unable to state any figure that he would place its value at.    Mr. Henry Glass stated that the land was not good grain growing land, but fair for stock growing. You will be careful to take all this testimony together, and adjust this amount from the average estimates of the disinterested witnesses who have been called here.    [Your damages, it seems to us (though it is merely an opinion of our own and not intended to sway you), could not be less than the estimate of Mr. Myers, which would be $300, or any figure from that up to about $750, which we believe is the maximum].    .    .    .

[You will recollect you are not to take into consideration any speculative or imaginary damages to swell the amount upon one hand, nor are you to deprive this plaintiff upon the other hand of any actual loss that he has sustained by the acts of this corporation.]    You will recollect that while this action is in the form of a trespass, there is no wrong alleged or done here to this plaintiff.    In actions of trespass at common law there is an implied wrong upon the part of the defendant that does not exist here.    The party defendant pursued the course provided by the act of assembly.    They could not agree upon the terms, and the

law provides that in such case there shall be certain proceedings culminating in the case which you have before you. It is not a question of right or wrong. The defendant had a right to make a railroad there. It had a right to deal with plaintiff for right of way; and if it could secure it, well—if not, this course is pointed out. Neither the plaintiff nor the defendant are to be considered as at fault in not coming to an agreement; in many cases they cannot agree in their views; and hence this jury and this court have to dispose of the case between them, and you will dispose of it upon the evidence, in the way I have indicated, and in such manner as satisfies your conscience. You will not do as juries are often in the habit of doing (rendering verdicts against parties because they are wealthy, or because they are corporations); but you will find what the actual damage was to this man and render your verdict accordingly.

Verdict and judgment for plaintiff for $650.

The assignments of error specified the refusal of the defendant's points as above and the portions of the charge inclosed within brackets.

*F. A. Shoemaker,* for plaintiff in error.—The railroad company, as appears from the record, complied with the law; and on giving the bond, which was done, the right of way vested in the company. Philadelphia & R. R. Co. v. Lawrence, 10 Phila. 604.

The right of way being vested in the company, the right of entry upon the premises for the purposes of the company (locating and constructing a railroad) was in the company; and hence trespass *quare clausum fregit* would not lie. Edelman v. Yeakel, 27 Pa. 27.

An entry before the approval of the bond is a trespass. Dimmick v. Brodhead, 75 Pa. 464.

Therefore, an entry after the approval of the bond is not a trespass.

The action should be a "feigned issue" upon a wager, not an action of trespass *quare clausum fregit.*

The bond stands as security for the damages occasioned by the construction and location of the road. Wadhams v. Lackawanna & B. R. Co. 42 Pa. 303.

The landowner must look to the bond for his damages., Fries v. Southern Pennsylvania R. & Min. Co. 85 Pa. 73.

On the trial of the action of trespass *quare clausum fregit,* there was no evidence given of the actual damage done or of the quantity and value of the land or material taken or used by the defendant; and while the court directs the form of the issue, the law does not require the court to stultify itself by directing, at the request of the counsel, an action of trespass *quare clausum fregit* to be brought against one, in the lawful possession of the *locus in quo.* Would any lawyer pretend to say that in an action of trespass *quare clausum fregit,* brought against a person for cutting the timber from a tract of land, the damages would be the difference in the value of the land, before and after the cutting?

The court erred in the charge to the jury. They should have been instructed that the true measure of damage is the difference in the value of the land, unaffected by the construction of the road, and as affected by it, making a just comparison of the advantages and disadvantages, arising by reason of the construction of the road. From the charge the jury were induced to believe that they must render a verdict for the plaintiff in not less than $300.

*George M. Reade,* for defendant in error.—The court below is given a discretionary power as to the form of the issue; and it is contended that the general practice has been to use in these cases common-law forms. Delaware, L. & W. R. Co. v. Burson, 61 Pa. 369, 371, 378; McClinton v. Pittsburg, Ft. W. & C. R. Co. 66 Pa. 411; Dorlan v. East Brandywine & W. R. Co. 46 Pa. 521; Wilmington & R. R. Co. v. Stauffer, 60 Pa. 375, 379, 100 Am. Dec. 574; Short v. Rochester & P. R. Co., 5 Sad. Rep. 196; Harvey v. Lackawanna & B. R. Co. 47 Pa. 428.

Even prior to the act of 1856, directing that "either party may put the cause at issue in the form directed by said court," it was the general practice to regard such trials as actions of trespass. Union Canal Co. v. Woodside, 11 Pa. 177, 178.

Prior to the act of 1856 it was also held that no declaration was necessary on the trial of an appeal from the award of viewers. Lehigh Valley R. Co. v. Lazarus, 28 Pa. 203, 206.

Certainly the defendant below and plaintiff in error had a fair and full trial, was not hampered nor hindered; nor was any evidence on either side admitted or excluded because of the form of the issue.

The learned court, it is contended, instructed the jury correct-

ly on the measure of damages.   Watson v. Pittsburgh & C. R. Co. 37 Pa. 469, 481; East Pennsylvania R. Co. v. Hiester, 40 Pa. 53, 56; Hornstein v. Atlantic & G. W. R. Co. 51 Pa. 87, 90; Pittsburgh & L. E. R. Co. v. Robinson, 95 Pa. 430; Phillips v. Allegheny Valley R. Co. 107 Pa. 465; Pittsburgh, B. & B. R. Co. v. McCloskey, 110 Pa. 436, 1 Atl. 555; Setzler v. Pennsylvania S. Valley R. Co. 112 Pa. 56, 4 Atl. 370; Philadelphia & R. R. Co. v. Getz, 34 Pittsb. L. J. 448; Pittsburg Southern R. Co. v. Reed, 4 Sad. Rep. 353; Sunbury & E. R. Co. v. Hummell, 27 Pa. 105; Pittsburg, V. & C. R. Co. v. Rose, 74 Pa. 362, 368; Hoffer v. Pennsylvania Canal Co. 87 Pa. 221; Bethlehem South Gas & Water Co. v. Yoder, 112 Pa. 136, 4 Atl. 42.

It is submitted that the authorities cited by the plaintiff in error do not sustain any of its positions.

PER CURIAM:

The form of issue in this case is of no consequence; by it the parties had opportunity to canvass all the facts, and of asserting and settling what they conceived to be their rights; this was all that either could require. The learned judge's opinion as to the amount of damages which the jury might find was properly qualified; it did not trespass upon the province of the jury, and, therefore, did the defendant no harm.   His charge contains a proper exposition of the legal rule governing the assessment of damages; and the whole case was well tried, and a proper disposition made of it.

The judgment is affirmed.